## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY BLAND, individually and on
behalf of all other similarly situated,

 Plaintiff,

v.

CABINETS TO GO, LLC,

 Defendant.

Civil Action No. 1:25-cv-01775
(Hon. Keli M. Neary)

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## CABINETS TO GO'S MOTION TO DISMISS

# I.   CONTENTS

**II.   Introduction**................................................................................1

**III.   Questions Involved**......................................................................1

**IV.   Factual Background**.....................................................................1

**V.   Legal Standard**............................................................................2

**VI.   Argument**....................................................................................3

  A.   Defendant has consented to general jurisdiction here. *Mallory* forecloses its constitutional challenge. .......................................................3

  B.   Pennsylvania's general jurisdiction statute is constitutional because it does not violate the Dormant Commerce Clause. ........................................5

    1.   The statute is not facially discriminatory......................................6

    2.   The statute does not run afoul of refined *Pike* balancing because the benefits and burdens are incommensurable. .......................................8

    3.   Similar schemes are constitutionally permissible. ......................13

  C.   The Jumara private factors counsel against transfer......................16

  D.   The Jumara public factors counsel against transfer.......................19

**VII.  Conclusion**...............................................................................22

## Cases

*Aguarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441 (E.D. Pa. 1973)................................................................16

*Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30 (D.N.J. 2024).............4

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ...........................2

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357 (3d Cir. 1983) ..............................................................................2

*Dean Milk Co. v. City of Madison, Wis.*, 340 U.S. 349 (1951) ................................8

*Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961)....................... 5, 14, 15

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) ..................................11

*Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124 (N.D. Cal. 2019) ...............21

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)............................................................2

*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017)..................................................21

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995).................. passim

*Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605 (E.D. Pa. 2018)...........................21

*Lacks v. Ultragenyx Pharmaceutical, Inc.*, 768 F. Supp. 3d 705 (D. Md. 2025).. 13, 14, 15

*Leonettl's Frozen Foods, Inc. v. Crew, Inc.*, 140 F. Supp. 3d 388 (E.D. Pa. 2015). ........................................................................................................................19

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023)........................................ passim

*Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ..................... 8, 9, 10

*National Paintball Supply, Inc. v. Cossio*, 996 F. Supp 459 (E.D. Pa. 1998) .........16

*Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023) .......................... passim

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ............................................ passim

*Simpson v. J.G. Wentworth Co.*, No. CV 22-2911-KSM, 2023 WL 349251 (E.D. Pa. Jan. 19, 2023) .................................................................................................19

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). .........................................22

*Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11–1464, 2011 WL 5869602 (D.N.J. Nov. 22, 2011) ...........................................................................17

*Yerger v. Massachusetts Tpk. Auth.*, 395 F. App'x 878 (3d Cir. 2010) ...................6

*York Paper Co. v. Hollinger Int'l, Inc.*, No. CIV.A. 03-CV-687, 2003 WL 21295001 (E.D. Pa. Apr. 22, 2003).......................................................................16

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................2

42 Pa. Cons. Stat. § 5301 ............................................................................... 1, 4, 5

**Other Authorities**

Abigail Nilsson, *Railroading Interstate Corporations: Personal Jurisdiction and Dormant Commerce After Mallory v. Norfolk Southern Railway Co*, 108 Marquette L. Rev. 583 (2024) ...............................................................................6

Defendant's Motion to Dismiss (MTD) ...................................................... 3, 7, 9, 11

Matthew J. O'Hara, *From Mallory to Morality: The Compatibility of Registration-Jurisdiction Laws with the Dormant Commerce Clause*, 73 Buffalo L. Rev. 199 (2025).................................................................................................... 7, 10, 12

N.D. Tex. LR 23.2...................................................................................................20

Petitioner Appendix at 75a, *Nat'l Pork Producers v. Ross*, 598 U.S. 356 (2023) (No. 21-468) .......................................................................................................13

## II.    INTRODUCTION

Defendant Cabinets to Go's (Cabinets to Go or Defendant)'s motion to dismiss must be denied because the Supreme Court's opinion in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), establishes personal jurisdiction here. Defendant's constitutional challenge to Pennsylvania's general jurisdiction statute, relying on a lone concurrence in *Mallory*, must be rejected as contrary to contemporary dormant Commerce Clause jurisprudence. Relatedly, Defendant's bid to transfer venue, despite the Plaintiff's choice, should similarly be rejected. Defendant's motion should therefore be denied in its entirety.

## III.    QUESTIONS INVOLVED

1.    Is general personal jurisdiction appropriate here, given that Pennsylvania's general jurisdiction statute, 42 Pa. Cons. Stat. § 5301, is constitutional?

Suggested Answer: Yes.

2.  Is transfer warranted?

Suggested Answer: No.

## IV.    FACTUAL BACKGROUND

Defendant cites to factual allegations about the Plaintiff's alleged residence and prior litigation history, which are irrelevant because general jurisdiction allows suit regardless of where the injury occurred. As relevant here, Defendant Cabinets to Go has qualified as a foreign corporation, number 4027679, in Pennsylvania and thus consented to the exercise of *general* personal jurisdiction against it in the courts of this Commonwealth. 42 Pa. Cons. Stat. § 5301(a)(2)(i). The Plaintiff

1

brought this action alleging four separate causes of action, including violations of
the TCPA's do not call, internal do not call, and caller ID provisions, and the
Texas Business and Commerce Code, arising out of Plaintiff's receipt of calls to
her Texas telephone number. Defendant has moved to dismiss on the basis that
Pennsylvania's general jurisdiction statute is unconstitutional, and/or to transfer
this matter to the Northern District of Texas. This response follows.

## V.    LEGAL STANDARD

The standard for a motion to dismiss under Rule 12(b)(2) is well-established.
In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the
complaint as true and draw all inferences in the plaintiff's favour. *Carteret Sav.
Bank, FA v. Shushan*, 954 F.2d 141, 151 (3d Cir. 1992). Plaintiff must merely
allege sufficient facts to establish a *prima facie* case of jurisdiction over the
defendant. *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A.
d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).

A district court may, in the interest of justice, "transfer any civil action to
any other district or division where it might have been brought." 28 U.S.C. §
1404(a). The party moving for transfer bears the heavy burden of demonstrating
that transfer is proper since the plaintiff's choice of forum is entitled to great
weight and will rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508
(1947). In *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879–80 (3d Cir.

1995), the Third Circuit articulated six private and six public factors that a Court

must weigh in determining if transfer is appropriate. They are reproduced below:

| *Jumara* Private Factors | *Jumara* Public Factors |
|---|---|
| Plaintiff's forum preference. | Enforceability of a judgment. |
| Defendant's forum preference. | Practical trial considerations. |
| Where the claim arose. | Administrative difficulty and caseload. |
| Convenience of parties. | Local interests in local controversies. |
| Convenience of witnesses. | Public policies of forum. |
| Location of books and records. | Familiarity with state law. |

In deciding whether to transfer, this Court must first examine whether the

statutory prerequisite that the transferee court is one in which the action "might

have been brought" is satisfied. *Id.* at 879. If it is, as here, the Court must then

consider the *Jumara* public and private factors to evaluate whether the transfer is in

the interests of justice and would serve the convenience of parties and witness. *Id.*

## VI.    ARGUMENT

A.    *Defendant has consented to general jurisdiction here.* Mallory *forecloses its constitutional challenge.*

Defendant's dormant Commerce Clause argument rests on Justice Alito's

solo concurrence in *Mallory*. (MTD at 9, 14). But no other Justice joined that

concurrence, and the Court expressly declined to hold Pennsylvania's registration

statute unconstitutional on any ground, including under the dormant Commerce

Clause. *Mallory*, 600 U.S. at 144 (plurality) (upholding 42 Pa. Cons. Stat. § 5301 as consistent with due process based on defendant's consent."). Defendant Cabinets to Go has here consented to the exercise of general personal jurisdiction in Pennsylvania on the basis of its registration. After *Mallory*, that is the end of the analysis.

Nothing in *Mallory* transforms a lone concurrence into controlling law. To the contrary, the only binding holding is that Pennsylvania's consent by registration jurisdiction statute is constitutional under the Due Process Clause. The Court remanded for consideration of other issues but did not remotely suggest that the statute is presumptively invalid under the dormant Commerce Clause; to the contrary, it suggests the opposite. *Id.* at 144-46.

Defendant's brief effectively invites this Court to treat Justice Alito's concurrence as if it were a majority opinion announcing a new rule that states may not condition the privilege of doing business on consent to general jurisdiction because it violates the dormant Commerce Clause. That is not how precedent works. If possible, courts should adhere to the wise policy of avoiding the unnecessary adjudication of difficult questions of constitutional law. *Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30, 39 (D.N.J. 2024).

This Court should simply follow *Mallory*, holding that Defendant has consented to general personal jurisdiction in Pennsylvania on account of its

4

registration, and end the analysis. Defendant cannot rely on a single Justice's tentative musing about how the statute may be challenged in the future to overcome its presumptive constitutionality already addressed by the Supreme Court. Defendant's argument is precluded by the express holding in *Mallory*. Perhaps unsurprisingly, the instant case is the first one the Plaintiff has found in either state or federal court addressing the question of the constitutionality of Section 5301 *after Mallory* on dormant Commerce Clause grounds. This Court should not be the first.

B.    *Pennsylvania's general jurisdiction statute is constitutional because it does not violate the Dormant Commerce Clause.*

*Mallory* already held Pennsylvania's consent by registration statute, which imposes general jurisdiction and permits suit against any company that registers to do business in Pennsylvania regardless of where the injury arose, satisfies constitutional due process, including fair play and substantial justice. 600 U.S. at 145. It is also unquestionably constitutional under the dormant Commerce Clause for three reasons. *First*, Pennsylvania's registration statute is admittedly not facially discriminatory. *Second*, Pennsylvania's statute cannot be analysed under the refined *Pike* balancing test the Supreme Court announced in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023). *Finally*, Pennsylvania's statute is constitutional under an earlier dormant Commerce Clause case, *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961).

5

In order to determine whether a state law violates the dormant Commerce Clause, a court must engage in a two-fold inquiry. *Yerger v. Massachusetts Tpk. Auth.*, 395 F. App'x 878, 881 (3d Cir. 2010). First, the court considers whether the law discriminates against interstate commerce on its face or in effect. *Id.* If it does, it applies heightened scrutiny and will likely hold it violates the Clause. *Id.* If it does not, the court considers whether the law is invalid under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), as refined by the Supreme Court in *Ross*. Under the modified *Pike* test, a court must *first* consider whether the benefits and burdens of a state law are capable of weighing, or if they are "incommensurable." *Ross*, 598 U.S. at 382 (2023). If they are incommensurable, a court may not attempt to balance as this is a "task no court is equipped to take." *Id.* "In a functioning democracy, policy choices like these usually belong to the people and their elected representatives." *Id.*

1.  The statute is not facially discriminatory.

There can be little question that Pennsylvania's consent by registration statute is *not* facially discriminatory against out of state corporations. Even Defendant's own authority concedes that. Abigail Nilsson, *Railroading Interstate Corporations: Personal Jurisdiction and Dormant Commerce After Mallory v. Norfolk Southern Railway Co*, 108 Marquette L. Rev. 583, 610-11 (2024) (applying *Pike* balancing and noting that "[The facial discrimination] principle has

applied primarily to statutes with a more direct impact on commerce than consent-to-jurisdiction statutes. . . . The impacts on interstate commerce of a consent-to jurisdiction statute would be entirely indirect."). The statute applies to all "out-of-state corporations who register to do business in the State." (MTD at 10.) Thus, on its face, the statute does not favor in-state corporations over out-of-state ones. Every corporation, foreign or domestic, that chooses to register is subject to the same condition: consent to general jurisdiction.

When a law is not facially discriminatory, defendants "begin in a tough spot." *Ross*, 598 U.S. at 370. The statute here is not discriminatory, either on its face or in its practical effect, because it applies uniformly to *all* companies and does *not* grant any advantage to out-of-state companies. Matthew J. O'Hara, *From Mallory to Morality: The Compatibility of Registration-Jurisdiction Laws with the Dormant Commerce Clause*, 73 Buffalo L. Rev. 199, 199 (2025). On the contrary, at least one commentator has noted that Pennsylvania's consent by registration statute actually *harms* local businesses, which is the exact *opposite* of what the dormant Commerce Clause seeks to address: laws that disproportionately harm *out-of-state economic* activities in favor of local *economic* activities. *Id.* at 216, 229. Pennsylvania's consent by registration statute is the exact opposite of protectionism, burdening all corporations to general jurisdiction in Pennsylvania, and potentially making Pennsylvania a *less* attractive place to conduct business.

That's precisely the opposite of the self-dealing economic measures that the dormant Commerce Clause was designed to stop.

That also brings up an important distinction. The dormant Commerce Clause, historically speaking, has been thought of to prevent *economic* protectionism, not generally applicable laws with incidental economic effects. That's why a law requiring all milk to be bottled within five miles of a city center blatantly violates the dormant Commerce Clause, *Dean Milk Co. v. City of Madison, Wis.*, 340 U.S. 349, 351 (1951), but a neutral statute that prohibits all milk producers from using plastic packaging does not, even if it has some incidental economic effects. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981). The Framers were concerned that states would use statutes as a bludgeon to discriminate against out of state interests and thus enrich themselves at the expense of a national market. They were not worried that a state might decide, at its own burden and expense, to open its courts more broadly as a forum for nationwide disputes. Because Pennsylvania's consent by registration statute is facially neutral and not economically protectionist, it must be analyzed as a nondiscriminatory law potentially subject to refined *Pike* balancing.

2.   The statute does not run afoul of refined *Pike* balancing because the benefits and burdens are incommensurable.

And *Ross* underscores that refined *Pike* balancing is a very narrow and deferential test. *Ross*, 598 U.S. at 378. Defendant's *Pike* claim fails initially

because the Motion to Dismiss doesn't even plausibly allege how Pennsylvania's

consent by registration statute has a "substantial burden on interstate commerce."

*Ross*, 598 U.S. at 393 (2023) (Sotomayor, J. and Kagan, J., concurring). That's a

prerequisite for this Court to even begin to consider *Pike*. *Id.* All it does is cite a

law review article's own conclusory analysis that the statute imposes "substantial

costs" on out of state corporations because they are haled into court in

Pennsylvania, despite such costs not even being commercial in nature. (MTD at

12-13.) It cites no reasons why these burdens are "substantial," let alone any reason

to conclude that it disproportionately imposes them on foreign corporations. *Clover

Leaf*, 449 U.S. at 473. Defendant challenges a facially nondiscriminatory,

noneconomic law that minimally burdens companies by needing to defend cases in

a different forum. Its claims of unconstitutionality thus fall "outside *Pike's*

heartland. That is not an auspicious start." *Ross*, 598 U.S. at 380.

Defendant urges this Court to undertake the analysis that the Supreme Court

held was impermissible in *Ross*, a "freewheeling power" to strike down a "duly

enacted state law" regulating business registration based on nothing more than this

Court's own assessment of the law's "costs" and "benefits." *Id.* Defendant's

contention that Pennsylvania's consent by registration statute provides "no

discernible benefit from opening its courts for out-of-state plaintiffs for out-of-state

losses against out-of-state defendants" is not only the precise kind of crude cost-

benefit analysis that *Ross* says judges *cannot* undertake, it's also wrong.

To see why, consider that states like Pennsylvania have a "legitimate interest in providing a forum for out-of-state plaintiffs as a matter of ethical solidarity, even when the State itself derives no direct benefit." *O'Hara*, 73 Buffalo L. Rev. at 200. A local interest is still a local interest, even if that interest is somewhat unclear, as reflected in the Supreme Court's differing pre-*Ross* methodology for ascertaining the appropriate local interest. Providing a forum in Pennsylvania for plaintiffs that might otherwise be shut out of court in other states is itself a legitimate local interest in that is preserves good order and public morals out of a sense of neighborly solidarity. *Id.* at 235 (analyzing the concept of solidarity as dating from antiquity and involving supporting an aggrieved party even when no reciprocal benefit is offered).

One may think of the statute here as a sort of state-sanctioned *pro bono* program, giving a forum to aggrieved plaintiffs who may otherwise be shut out of court and otherwise suffer an injustice. A state like Pennsylvania may reasonably decide that giving injured persons, wherever they reside, access to its courts to hold corporations accountable is itself a worthy policy choice. This is no different than thinking that banning plastic milk cartons in a state may help the global environment, *Clover Leaf*, 449 U.S. at 471-72, that prohibiting oil companies from operating gas stations may help alleviate a national gasoline shortage, *Exxon Corp.*

10

*v. Governor of Maryland*, 437 U.S. 117, 120 (1978), or that prohibiting the sale of pork from pigs "confined in a cruel manner" helps safeguard national animal welfare. *Ross*, 598 U.S. at 366. On the other hand, consider the alleged "burdens" that the Defendant barely articulates: alleged "unpredictability," "costs," and "distan[ce]." (MTD at 12, 14.) These are simply repackaged versions of the same due process complaints that the Court rejected in *Mallory*. 600 U.S. at 144-45. Even so, unlike the pork law in *Ross*, Pennsylvania's registration statute does not require Defendant to retool its operations, change its products, or alter its business model anywhere in the country. It merely conditions the privilege of doing business in Pennsylvania on a litigation consequence that any national corporation, let alone one with three physical showrooms and staff in Pennsylvania, can readily price and plan for.

As *Ross* makes clear, although the state interests may be difficult to quantify, especially when they are based on overarching moral and ethical concerns, that does not make them any less real, nor cause them to cease to exist. *Id.* at 382 (noting that ethical benefits cannot be weighed against economic harms and that they are "incommensurable."). With all respect to Justice Alito, the concerns addressed in the concurrence represent *precisely* the kind of issues that *Ross* makes clear cannot be weighed because they cannot be appropriately valued. If one values people, the benefits of Pennsylvania's statute outweigh any economic

harms. But if one values profits, the harms clearly outweigh the benefits. That requires one to "pigeonhole the State interest requirement . . . into purely tangible, economic interests." *O'Hara*, 73 Buffalo L. Rev. at 234. But *Ross* affirmed precisely what Justice Alito does not: states "can indeed ground their interests in intangible ethical considerations." *Id.* at 235.

That Justice Alito does not actually undertake a balancing of the instant statute in *Mallory* is not surprising. Alito was one of the four justices in *Ross* who wrote a partial concurrence defending *Pike* balancing, arguing that the burdens were economic and thus weighable, and suggesting that the case should have been remanded to conduct an appropriate *Pike* analysis. *Ross*, 598 U.S. at 402-403 (Alito, J., concurring). But that concurrence is not the law. In *Ross*, the majority affirmatively held that courts are "not institutionally suited to draw reliable conclusions of the kind that would be necessary to satisfy the *Pike* test as petitioners conceive it." *Id.* at 380 (cleaned up). The issues that the *Ross* majority held were unweighable are precisely the same issues that Justice Alito identified in his concurrence in *Mallory*. Justice Alito would have had to weigh the unweighable to hold the statute here unconstitutional, and that's a line of inquiry that *Ross* no longer permits. Courts cannot second-guess policy judgments in light of their economic effects.

If the dormant Commerce Clause does not authorize invalidation of a law

that restructures the national pork industry, an economic fallout far more drastic than even the most Orwellian interpretation of the jurisdictional statute here, it certainly does not require this Court to nullify a neutral jurisdictional statute that simply holds corporate registrants to their consent to be sued. It is the Kelly Blands of the nation, those people who suffer needlessly from the actions of others, that are the most deserving of this judicial solidarity. What interest (for the purposes of *Pike*) does Pennsylvania have in this? The same interest California had in *Ross*: "moral satisfaction, peace of mind, [or] social approval." Petitioner Appendix at 75a, *Ross*, 598 U.S. 356 (2023) (No. 21-468)

    3.  Similar schemes are constitutionally permissible.

    A recent case out of the District of Maryland, *Lacks v. Ultragenyx Pharmaceutical, Inc.*, confirms that the instant statute does not run afoul of the dormant Commerce Clause. *Lacks* highlights that each state has long enjoyed broad authority to define where and how corporations may be sued, how they must operate, and other particular corporate formalities, subject to due process. 768 F. Supp. 3d 705, 720-721 (D. Md. 2025). The *Lacks* Court upheld, on Due Process and dormant Commerce Clause grounds, a Maryland statute that forfeits statute of limitations defences to foreign corporations unless they register to do business in the state and agree to Maryland's statute of limitations for any action brought against them as a result. *Id.* at 733.

The *Lacks* Court relied in part on an extended analysis of *Eli Lilly*. *Lacks* explained that *Eli Lilly* squarely held a state may require a foreign corporation that has localized its business in the forum to comply with corporate registration requirements and may attach litigation-related consequences to noncompliance, so long as the state is not targeting interstate commerce itself. *Id.* at 726. At issue in that case was a New Jersey statute that "clos[ed] the courthouse doors to foreign corporations that conducted intrastate business without . . . registering to do so," which the Supreme Court upheld in the face of a dormant Commerce Clause challenge. *Id.* at 725. Even though *Eli Lilly* predates the modern two-tier dormant Commerce Clause framework, *Lacks* stressed that it "remains the law" and controls where (as here) the challenged statute simply conditions access to state-law privileges (here, doing business in the state) on compliance with neutral registration rules. *Id.* at 718, 720. ("[S]tates may impose a registration requirement on a foreign corporation that conducts both interstate and intrastate business in the state.").

*Lacks* distilled from *Eli Lilly* a "well established" principle that maps directly onto this case. Where a foreign corporation is doing intrastate business, the state may both require registration and impose incidental, registration-related burdens, such as loss of a cause of action or defense, or here, consent to general jurisdiction, to "regularize its conduct" with in-state firms. *Id.* at 720. Like

Pennsylvania's voluntary corporate registration scheme, Maryland's is also voluntary, extending a carrot (state statute of limitations) for companies that register, and extending a stick (denying that defense) for companies that do business in Maryland but do not. *Id.* at 725. The Court noted that this penalty was "less burdensome" than the penalty in *Eli Lilly*, denial of court access entirely, that the *Eli Lilly* court held constitutional. *Id.*

Applying those principles, the *Lacks* court treated Maryland's "register or lose a defense" scheme, much like Pennsylvania's consent-by-registration statute, as a permissible effort to protect residents and administer its corporate law by imposing consequences on corporations that fail to do so. *Id.* at 721. Such schemes do not "build up domestic commerce" at the expense of out-of-state competitors by imposing burdens on them. *Id.* at 729. Because the Maryland statute, like Pennsylvania's, applies only to foreign corporations engaged in localized business (and thus are required to register), treated domestic corporations the same, and did not restrict the flow of goods or services across state lines, it held any incidental burdens on interstate commerce were constitutionally insignificant under *Eli Lilly* and modern dormant Commerce Clause doctrine alike. *Id.* at 729-732. *Eli Lilly* thus counsels against Defendant's constitutional challenge.

C.    The *Jumara private factors counsel against transfer.*

The burden is on Cabinets to Go to justify a transfer, and that burden is

"heavy." *York Paper Co. v. Hollinger Int'l, Inc.*, No. CIV.A. 03-CV-687, 2003 WL

21295001, at *1 (E.D. Pa. Apr. 22, 2003). The plaintiff's choice of venue is "a

paramount consideration." *National Paintball Supply, Inc. v. Cossio*, 996 F. Supp

459, 462 (E.D. Pa. 1998). Because this Court has jurisdiction and venue is

appropriate, Cabinets to Go has not met its burden of justifying transfer, let alone

its "heavy" burden for doing so, particularly in light of the Plaintiff's choice of

venue, and particularly as the transfer motion is being used to avoid a live

constitutional question. Transfer is not warranted if it "would merely shift the

inconvenience from the defendant to the plaintiff." *Aguarium Pharmaceuticals,*

*Inc. v. Industrial Pressing & Packaging, Inc.*, 358 F.Supp. 441, 446 (E.D. Pa.

1973). That being the case here, this case ought not to be transferred.

The six *Jumara* private factors govern whether a Court should transfer

venue, as outlined above. On balance, those factors favor Ms. Bland, not Cabinets

to Go.

The first *Jumara* factor, the Plaintiff's forum preference, almost always tips

in favor of the Plaintiff, as Defendant concedes. As the Third Circuit outlined in

*Jumara*, the plaintiff's choice of forum is entitled to great weight and will rarely be

disturbed. *Jumara*, 55 F.3d at 879. Here, Plaintiff has chosen the Middle District of

Pennsylvania, and this choice should not be disturbed, Plaintiff's residence notwithstanding. And although the complementary *Jumara* factor, the Defendant's forum preference, will almost always tip in favor of the Defendant, the Defendant has not made the corresponding showing that it should outweigh the Plaintiff's forum preference here. Indeed, the Defendant's forum preference of the Northern District of Texas is even more perplexing given that it is a Florida corporation with its headquarters in Tennessee. Other than a single witness, Ms. Bland, being located in Texas, it points to no reasons why its choice of Texas here has an interest, or why it has the "most substantial contacts to the matters in dispute." This makes it burden objections particularly weak, particularly insofar as Texas has practically as little to do with this matter as Pennsylvania. In sum, then, the two *Jumara* private preference factors do not entirely discount the Plaintiff's choice of forum; to the contrary, the counsel in favor of it.

Third, although the claim may have arose in Texas, Plaintiff respectfully submits that this *Jumara* factor should weigh, if anything, neutrally, because the claim has been brought pursuant to, and jurisdiction asserted under, Pennsylvania's general jurisdiction statute. "The third private factor . . . may be best understood as a consideration of which forum constitutes the 'center of gravity' of the dispute, its events, and transactions." *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11–1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011). Particularly here, given

Defendant's constitutional challenge, the center of gravity of the dispute is still partly on Pennsylvania. Otherwise, any Defendant could simply contravene a general jurisdiction case by asserting that the claim arose elsewhere.

Fourth and Fifth, the convenience of the parties and witnesses also counsel in favor of this matter remaining in Pennsylvania. *Jumara* counsels that convenience should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Transferring the case to Texas would not affect that exchange or eliminate any "inconvenience." In either case, Defendant will need to travel to Pennsylvania or Texas from either Tennessee or Florida, which is just as equally burdensome. Indeed, Pennsylvania is arguably a more centrally located forum here, being *closer* to both Tennessee *and* Florida than Texas. The fourth and fifth *Jumara* factors are also driven by monetary considerations and each party's respective financial position. *Virag, S.R.L.*, 2015 WL 1469745, at *6 (D.N.J. Mar. 30, 2015). Here, the Plaintiff is represented by a capable and experienced class action attorney that has the resources to litigate this case (and to pay for Plaintiff's required travel), but those resources are miniscule compared to the Defendant, a nationwide cabinet company with three stores in Pennsylvania. The Plaintiff is an individual of modest means without an extensive corporate travel planning network. The Defendant is a large, nationwide corporation with hundreds of employees, three showrooms in

18

Pennsylvania and thus can better manage any increased travel or litigation costs as a result of litigating here. *Id. Simpson* is inapposite and actually helps Plaintiff. When all parties have to travel, and the Plaintiff has indicated a willingness to do so, as here, that causes these *Jumara* factors to weigh *against* transfer. *Simpson v. J.G. Wentworth Co.*, No. CV 22-2911-KSM, 2023 WL 349251, at *6 (E.D. Pa. Jan. 19, 2023). There, the *plaintiff* was seeking transfer based on a move. Here, Defendant seeks transfer, and the Plaintiff has no issues with convenience. For that matter, Plaintiff thinks it will be just as convenient, if not more so, to litigate in Pennsylvania than in Texas. Sixth, the location of (electronic) documents weighs neutrally, as Defendant concedes. *Leonettl's Frozen Foods, Inc. v. Crew, Inc.*, 140 F. Supp. 3d 388, 394 (E.D. Pa. 2015).

On balance, because the *Jumara* private factors weigh in favor of the Plaintiff, not the Defendant, the Court should not grant transfer.

D.    The *Jumara public factors counsel against transfer.*

The *Jumara* public interest factors also disfavor transfer. The first *Jumara* public factor, that of the enforceability of a judgment, weighs neutrally, as Defendant concedes.

As to the second *Jumara* public factor, practical trial considerations, this factor weighs neutrally to against transfer. Trial in Texas would simply eliminate the need to travel of a *singular witness*, the Plaintiff, who has already indicated her

willingness to travel to Pennsylvania. Indeed, Plaintiff's counsel is a Pennsylvania resident, so all Defendant's transfer proposal simply results in substituting one person's travel for another, leading to no benefit. Moreover, with respect to this factor, the Court must also consider the practicalities of proceeding in each forum. Significantly, the practicalities here weigh heavily against transfer. *Jumara*, 55 F.3d at 879. The Northern District of Texas has a local rule requiring class certification to be sought within "90 days of filing a class action complaint." N.D. Tex. LR 23.2. Thus, at the time of transfer, Defendant will effectively have secured dismissal of the class action claims at issue by mere virtue of the transfer, which will almost certainly occur more than 90 days after filing (December 24, 2025). Transfer would also permit Defendant to sidestep Pennsylvania's general jurisdiction statute and complicate the Plaintiff's initial plan here to proceed thereunder. Most Northern District judges require in-person appearances, which would significantly increase the travel burden and cost of litigating this case there. These practical considerations make trial and motions practice in this matter all the more difficult, onerous, slow, and expensive.

The third *Jumara* public factor, the relative administrative difficulty and caseload of both courts, weighs strongly against transfer, as Defendant concedes weighs against transfer.

The fourth and fifth *Jumara* public factors weigh most significantly *against* transfer. As the Plaintiff has explained above, through its general jurisdiction statute, Pennsylvania has articulated a policy of having a local interest in having solidarity with out-of-state Plaintiffs and to provide them a forum for their claims. This local interest indisputably weighs heavily against, not in favor, of transfer. Similarly, the public policies of the forum, weigh strongly against transfer as well. Defendant itself has caused a significant "local policy" to be implicated here: Pennsylvania's consent by registration statute. *Kershner v. Komatsu Ltd.*, 305 F. Supp. 3d 605, 611 (E.D. Pa. 2018). As a matter of local policy and solidarity, that statute makes transfer inappropriate. Indeed, granting transfer would effectively result in a significant injury to the Plaintiff in bringing up a constitutional question that is capable of repetition but evading review and effectively provide Defendants a way out of Pennsylvania's general jurisdiction statute on venue grounds every single time on the basis of a venue loophole. *See Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (explaining the doctrine); *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1130 (N.D. Cal. 2019) (addressing state law forum selection claim before addressing venue). Pennsylvania has a local interest in ensuring that the general jurisdiction structure it has created is not easily circumvented, and this also weighs in favor of Pennsylvania's public policy, and courts must weigh state public policy considerations when considering a transfer motion. *Stewart Org., Inc.*

*v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988). And the sixth public interest factor weights against transfer for the same reasons. Pennsylvania judges have the most experience with Pennsylvania jurisdictional statutes, which weighs in favour of keeping this case here, the Texas law claim notwithstanding.

Being that the *Jumara* public factors also counsel against transfer, the motion ought to be denied.

## VII.    CONCLUSION

This Court must deny Defendant's motion to dismiss and transfer.

Dated: December 2, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,976 words.

DATED this December 2, 2025.

/s/ Andrew Roman Perrong

Andrew Roman Perrong, Esq.

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

December 2, 2025

*<u>/s/ Andrew Roman Perrong</u>*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com