IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO. 1:25-CV-1775 |
| | ) | (Judge Neary) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CABINETS TO GO, LLC, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS**

Defendant Cabinets To Go, LLC ("Cabinets To Go") files this Reply Brief in support of its Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the Alternative, to Transfer to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), and in support thereof, states the following.

### I.  INTRODUCTION

Plaintiff's Complaint should be transferred to the U.S. District Court for the Northern District of Texas under 28 U.S.C. Section 1404(a). Although Cabinets To Go believes that a full analysis of the constitutional issues warrants dismissal for want of personal jurisdiction, Cabinets To Go nevertheless urges this Court to apply principles of practicality and pragmatism, and as permitted, decline to engage in a complex assessment of the constitutional landscape that may well entail the involvement of other parties (such as the Pennsylvania Attorney

General's Office) to fully address the issue.  As the Supreme Court has recognized, granting transfer would eliminate the need for an extensive, expensive and potentially complicated constitutional analysis regarding whether Defendant is subject to personal jurisdiction in Pennsylvania.  *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979).  Notwithstanding the fact that this matter should be transferred pursuant to the Supreme Court's guidance in *Leroy*, fundamental principles of judicial economy and fairness warrant transfer to a forum where Plaintiff has not only been a long-time resident, but one where Plaintiff has brought numerous other TCPA cases, often represented by the same legal counsel representing her here.

   Although Defendant is not subject to personal jurisdiction in Pennsylvania, little purpose would be served by further litigation over a significant constitutional issue that would immediately become moot if this case were promptly transferred to the Northern District of Texas.  Plaintiff will suffer no prejudice from such a development but may well benefit from litigating in a court that is not only more convenient (and familiar) to her, but almost certainly more knowledgeable about the Texas statutory claim at issue.  However, if this Court were to decide the constitutional issue, then it should rule that Cabinets To Go is not subject to personal jurisdiction in Pennsylvania.

## II. ARGUMENT

A. **THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS IN THE INTERESTS OF JUSTICE AND IN ACCORDANCE WITH U.S. SUPREME COURT PRECEDENT.**

In *Leroy v. Great Western United Corp.*, the Supreme Court was faced with a similar situation where addressing jurisdiction would "require the Court to decide a question of constitutional law that it has not heretofore decided." 443 U.S. 173, 181 (1979). The Court held that "[a]s a prudential matter it is our practice to *avoid the unnecessary decision* of novel constitutional questions." *Id*. (emphasis added). To further this practical goal, the Court affirmed that while questions of jurisdiction are "typically decided in advance of venue," deciding a question of jurisdiction is *not* "fundamentally preliminary" and that "when there is a sound prudential justification for doing so . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Id*. at 180.

Following *Leroy*, other federal courts have elected to transfer claims to a proper venue without first deciding personal jurisdiction where doing so would be in the "interest of justice." *See Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993); *see also Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 85 (D.D.C. 2022), *dismissed,* No. 22-7077, 2022 WL 19975278 (D.C. Cir. Nov. 29, 2022); *Hypower, Inc. v. Atl. Elec., LLC*, No. 12-61633-CIV, 2013 WL 12086268 (S.D. Fla. Feb. 13, 2013); *Meyer v. Young Conaway Stargatt & Taylor LLP*, No. 1:CV-10-540-BLW, 2011 WL 1317282 (D.

Idaho Mar. 31, 2011). In doing so, courts have recognized that justice will be best served – and the parties' needs addressed in the most prompt, streamlined manner – if a given case is transferred to a forum with undisputed personal jurisdiction, allowing the case to proceed without the disruption and expense that comes from continued litigation over a purely procedural issue.

Plaintiff's Brief in Opposition avoids making any mention of *Leroy* or its progeny because doing so compels transfer to the Northern District of Texas. As set forth in Defendant's opening brief (and explained further below), the applicable *Jumara* factors support transfer to the Northern District of Texas – particularly when doing so allows the Court to avoid ruling on a complex constitutional issue. *See Leroy*, 443 U.S. at 181. Acknowledging this point, Plaintiff notes that no other state or federal court has addressed the constitutionality of Section 5301 through the lens of the dormant commerce clause. *See* Br. in Opp., p. 5. Thus, Plaintiff implicitly supports Defendant's argument that this Court should follow *Leroy* and decline to address a complex and far-reaching constitutional question by stating that "[t]his Court should not be the first" to address such a question. *Id.*

Further, continued litigation over whether Defendant can be considered "at home" in Pennsylvania from a constitutional standpoint will only come after further argument and extensive deliberation. Insofar as the Pennsylvania Office of Attorney General has yet to weigh in on whether it intends to intervene here, it stands to reason that continued litigation over the jurisdictional issue will only

4

further delay these proceedings, in a manner inconsistent with the Court's stated objective of resolving disputes in a prompt and timely manner. *See* Fed. R. Civ. P. 1; *see also Joan Summy-Long v. Pennsylvania State Univ.*, No. 1:06-CV-1117, 2016 WL 74767, at *8 (M.D. Pa. Jan. 7, 2016) ("[I]t is now unmistakable that the Court and the parties in any federal civil action must constantly strive to resolve unsettled disputes with the ultimate end of a 'just, speedy, and inexpensive determination of every action and proceeding.'") In contrast, based on *Leroy* and its progeny, this Court unquestionably has the power to set aside that potentially thorny constitutional debate by transferring this matter to a forum where Defendant will not contest personal jurisdiction, paving the road for a prompt resolution of whether Plaintiff has stated a claim under Fed. R. Civ. P. 12(b)(6). *See* Def. Br., at p. 3.

Following *Leroy* makes sense here because there is no discernable connection between the substantive matters in dispute and this forum. Indeed, the Plaintiff acknowledges that the TCPA claims arose in Texas where Ms. Bland received the telephone calls in question. *See* Pl. Br. in Opp., at p. 17.; *see also Fitzhenry v. Guardian Protection Servs., Inc.*, NO. 16-1253, 2016 WL 6652760, at *1 (W.D. Pa. Nov. 9, 2016). From the face of the Complaint, Ms. Bland has no apparent connection to this forum whatsoever, and the fact that Defendant operates three retail showrooms across the state – none of which have anything to do with

5

Plaintiff's claims – does nothing to root this action here in Pennsylvania.[1]  Indeed, the only connection this case has to Pennsylvania is the fact that Plaintiff's counsel has an office here, which, without more, is not sufficient to support personal jurisdiction.  Further, Plaintiff's analysis of the fourth and fifth *Jumara* public interests factors misconstrues the proper analysis.  The proper analysis of these factors—the local interest in deciding local controversies at home and the public policies of each forum—must focus on the claims that Plaintiff asserts in its Complaint and not any questions surrounding the constitutionality of Pennsylvania's general jurisdiction statute.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879−80 (3d Cir. 1995).  When analyzing solely the claims in Plaintiff's complaint, these factors favor transfer when Plaintiff herself resides in that jurisdiction and brings a claim under Texas law, particularly where that claim is brought under a recently enacted Texas statute.  *See* Def. Br. at p. 17.

**B.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT UNDER DORMANT COMMERCE CLAUSE PRECEDENT.**

Although the Supreme Court in *Mallory* upheld the Pennsylvania consent-to-jurisdiction statute under the Due Process clause, a conclusion with which Justice Alito agreed, the statute nevertheless fails to pass muster under the dormant

---

[1] As set forth in Defendant's opening brief, Cabinets To Go is headquartered in Tennessee and formed under the laws of Florida.  *See* Def. Br., at p. 3.

commerce clause where the state's assertion of jurisdiction involves "lawsuits with no real connection to the State." *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 150 (2023) (Alito, J., dissenting). As commentators have noted, the Supreme Court's plurality opinion in *Mallory* – upon which Plaintiff bases her entire legal argument on personal jurisdiction − improperly relies on pre-*International Shoe* caselaw, and "unnecessarily sidesteps decades of precedent, mistakes coercion for consent and inaptly analogizes registration-jurisdiction statutes to tag jurisdiction on individuals." *See* Abigail Nilsson, *Railroading Interstate Corporations: Personal Jurisdiction and Dormant Commerce Clause After Mallory v. Norfolk Southern Railway Co.*, 108 Marq. L. Rev. 583 (2024) [hereinafter "Nilsson"].

    At its core, the statute is premised on the concept that out-of-state corporations "consent" to jurisdiction in the Pennsylvania courts when they register to do business in the Commonwealth. However, such businesses do not provide express "consent" when they register to do business here, since "jurisdiction is not mentioned at all in a corporation's registration paperwork." *See* Nilsson*,* at 601. Nor can "consent" be reasonably inferred from a corporation's conduct, since "if voluntarily acting in a way that is grounds for jurisdiction produced consent, consent would always be present, and no disputes over jurisdiction would even be necessary." *Id*. at 602.

Indeed, Pennsylvania is a true outlier on this issue for "it is the only state that continues to have a consent-to-jurisdiction statute, and only Georgia's caselaw infers consent to jurisdiction by registration to do business within its state lines." *Id*. at 604.  Although the fact that Pennsylvania is one of only two states that takes such an approach does not necessarily invalidate the statute on constitutional grounds, it certainly raises questions about the wisdom and purpose of subjecting out-of-state corporations to general jurisdiction here, absent some other meaningful connection to the state.

As Justice Alito aptly stated in his dissent: "I am hard-pressed to identify any *legitimate local* interest that is advanced by requiring an out-of-state company to defend a suit brought by an out-of-state plaintiff on claims wholly disconnected to the forum state . . . .[A] State generally does not have a legitimate local interest in vindicating the rights of non-residents harmed by out-of-state actors through conduct outside the State." *Mallory*, 600 U.S. at 162−63.  More significantly, Justice Alito explains that "Pennsylvania receives no discernible benefit from operating its courts for out-of-state plaintiffs for out-of-state losses against out-of-state defendants."  Nilsson, at 612 (analyzing *Mallory*, 60 U.S. at 162).  The "costs imposed on out-of-state businesses would be classified as economic costs, even if they are not directly commercial in nature" and accordingly "in the absence of any benefit for Pennsylvania in maintaining its law, the statute should not pass muster

8

under any *Pike* balancing, regardless of which part of the Court's formulation of the test is applied." *Id*.

WHEREFORE, for all of the foregoing reasons, Defendant respectfully requests that this Action be transferred to the Northern District of Texas or otherwise dismissed for lack of personal jurisdiction.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: */s/ Robert M. Linn*
    Robert M. Linn
    Pa. I.D. No. 44777
    Jonathan P. Sion
    Pa. I.D. No. 334062

625 Liberty Avenue
Pittsburgh, PA 15222-3152
Ph: (412) 297-4900
Fax: (412) 209-1975
Email: *robert.linn@dentons.com*
      *jon.sion@dentons.com*

Charles E. Dorkey, III
(*Admitted Pro Hac Vice*)
Dentons US, LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Ph: (212) 768-5320
Fax: (212) 768-6800
Email: *charles.dorkey@dentons.com*

Dated: December 16, 2025                                         *Counsel for Defendant,*
5433741.v3                                                                        *Cabinets To Go, LLC*

9

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, the foregoing Reply Brief in Support of Defendant's Motion to Dismiss or Transfer Venue to the Northern District of Texas was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/     Robert M. Linn*
